1  BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
2  ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
   PATRICIA N. SYVERSON (203111)
3  LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
   2325 E. Camelback Road, Suite 300
4  Phoenix, AZ 85016
   eryan@bffb.com
5  psyverson@bffb.com
   lgomez-gray@bffb.com
6  Telephone:   (602) 274-1100

7  BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
8  MANFRED MUECKE (222893)
   600 W. Broadway, Suite 900
9  San Diego, California 92101
   mmueke@bffb.com
10 Telephone: (619) 756-6978
   Telephone: (949) 706-6464
11
   STEWART M. WELTMAN LLC
12 STEWART M. WELTMAN (*To be admitted Pro Hac Vice*)
   122 S. Michigan Avenue, Suite 1850
13 Chicago, Illinois 60603
   sweltman@weltmanlawfirm.com
14 Telephone: 312-588-5033
   (Of Counsel Levin, Fishbein, Sedran & Berman)
15
   *Attorneys for Plaintiff*
16

17                **UNITED STATES DISTRICT COURT**

18               **SOUTHERN DISTRICT OF CALIFORNIA**

19 | YANIRA ALGARIN, On Behalf of | Case No.:  **'12 CV 2868 JAH  JMA** |
   | Herself and All Others Similarly Situated, | |
20 | | **CLASS ACTION COMPLAINT FOR:** |
21 | Plaintiff, | |
   | | 1.   VIOLATION OF THE UNFAIR |
22 | v. | COMPETITION LAW, Business and |
   | | Professions Code §17200 *et seq.*; |
23 | COTY INC., a Delaware Corporation, | 2.   VIOLATION OF THE CONSUMERS |
   | | LEGAL REMEDIES ACT, |
24 | | Civil Code §1750 *et seq.*; and |
   | Defendant. | 3.   BREACH OF EXPRESS |
25 | | WARRANTY. |
26 | | **DEMAND FOR JURY TRIAL** |

27

28

Plaintiff Yanira Algarin brings this action on behalf of herself and all others similarly situated against Defendant Coty Inc. and states:

## NATURE OF ACTION

1.     Coty manufactures, markets, sells and distributes Rimmel London Lash Accelerator Mascara with Grow-Lash Complex ("Rimmel Lash Accelerator" or the "Product").   Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Coty promises that in just 30 days, the Product, with its "advanced, ultra-lengthening" "clinically tested" "Grow-Lash Complex" formula will grow and multiply eyelashes.

2.     Coty's misleading marketing campaign begins with its deceptive Product name – "Lash Accelerator" – buttressed with an equally deceptive description of the Product's "advanced, ultra-lengthening" "clinically tested" "Grow-Lash Complex" formula. Both imply that Rimmel Lash Accelerator is not just cosmetic in nature, but will actually physically grow lashes.   Coty's exhaustive advertising campaign builds on this deception.   For example, on each and every Rimmel Lash Accelerator product label, where consumers cannot miss it, Coty represents that the Product instantly makes lashes appear 80% longer and, with "regular use," lashes will be "more numerous" and "within 30 days" will appear "117% longer."   The take away message from these representations is that while the Product will instantly give the cosmetic appearance of 80% longer lashes, after 30 days, consumers will experience an additional benefit – 37% physical growth and more numerous lashes (the "grow lash" claim).   To buttress its grow lash claim, Coty includes a picture of a ruler on the Product label with an eyelash that has grown an additional 37% longer after only 30 days of using the Product.   In short, taken in its context, the 37% representation is deceptive in that it imparts the message that the lashes will actually grow longer and multiply.

3.     The represented 37% growth and the representation that the Product will create more numerous lashes would not be interpreted by the reasonable consumer as

being purely cosmetic in nature because a reasonable consumer would believe that all cosmetic benefits are realized on the first application of the Product and remain the same with each successive application. Thus, to a reasonable consumer the represented 37% growth spike and "more numerous" lashes after 30 days representations would, when taken in the context of the name of the Product, the claims about its "Grow-Lash Complex" formula, and the ruler image on the packaging, would lead the reasonable consumer to conclude that these effects have to be the result of the purported ability of the Product's "Grow-Lash Complex" to physically cause lash growth and lash multiplication. Thus, while the word "appear" prefaces the 117% representation, in its context, at a minimum it is likely to confuse and thus deceive reasonable consumers into believing that the Product actually grows lashes.

4. In truth, Rimmel Lash Accelerator does not physically grow or multiply eyelashes and certainly not within the 30 day time frame advertised. Not even LATISSE®,[1] a prescription strength eyelash growth product, can grow lashes in 30 days. Several well conducted scientific studies of LATISSE® did not yield visible eyelash growth results for several months. There is nothing contained in Defendant's product that grows lashes. And, contrary to Coty's "clinically tested" representation, there are no credible and reliable "clinical test[s]" that show the Rimmel Lash Accelerator or any of its ingredients cause lashes to physically grow and/or become more numerous. Thus, Coty's grow lash claim is false, misleading, and reasonably likely to deceive the public.

5. Coty has employed numerous methods to convey its uniform, deceptive grow lash claim to consumers, including magazines, newspapers, the internet, social media websites and, importantly, on the Product's packaging and labeling where it cannot be missed by consumers. Consumers pay a premium over other lash applications, which unlike Rimmel Lash Accelerator are not falsely advertised as growing and multiplying

---

[1] The active ingredient in LATISSE® is bimatoprost. Rimmel Lash Accelerator does not contain bimatoprost.

lashes. The only reason a consumer would pay the premium price of the Rimmel Lash Accelerator is to obtain the additional grow lash benefits, which Rimmel Lash Accelerator does not provide.

6. As a result of Coty's deceptive grow lash claim, consumers -- including Plaintiff and members of the proposed Class – have purchased a Product that does not perform as advertised. Moreover, they have paid a price premium for Rimmel Lash Accelerator over other mascaras sold by Coty and its competitors that do not claim to physically grow or multiply eyelashes in 30 days.

7. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Rimmel Lash Accelerator to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Rimmel Lash Accelerator. Plaintiff alleges violations of the Consumers Legal Remedies Act, the Unfair Competition Law, and breach of express warranties created by Coty's advertising, including false labeling.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

9. This Court has personal jurisdiction over Coty because Coty is authorized to do and does conduct business in California. Coty has marketed, promoted, distributed, and sold Rimmel Lash Accelerator in California, and Coty has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Coty transacts substantial business in this District.

## PARTIES

11.     Plaintiff Yanira Algarin resides in San Diego, California..  In or around September 2012, Plaintiff was exposed to and saw Coty's grow lash claim by reading the Rimmel Lash Accelerator label at a Target in Lemon Grove, California.  In reliance on the grow lash claim, Plaintiff Algarin purchased Rimmel Lash Accelerator.  She paid approximately $8.00-$9.00 for 1 tube of Rimmel Lash Accelerator.  Plaintiff used the Product as directed for approximately a month and a half, but did not observe any physical growth (either lengthening or multiplication) of her eyelashes beyond some immediate cosmetic lengthening effect of the Product as represented after the first application.  Thus, Plaintiff does not take issue with the 80% immediate growth appearance representation, since some appearance of longer lashes would be expected and was observed from the application of mascara.  Instead, Plaintiff takes issue with the 37% lash grow and lash multiplication representations as being false and deceptive.  As a result, Plaintiff suffered injury in fact.  Had Plaintiff known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium priced Rimmel Lash Accelerator but would have purchased a  less expensive mascara.

12.     Defendant Coty, Inc. is a Delaware corporation headquartered at Two Park Avenue, 17th floor, New York, New York 10016.  Coty manufactures, distributes, markets and sells the Rimmel Lash Accelerator to consumers nationwide and created the deceptive grow lash claim, which it caused to be disseminated to consumers nationwide, including in California.

1

# FACTUAL ALLEGATIONS

2

### *Rimmel Lash Accelerator*

3        13.     Coty owns the Rimmel London brand.  In 2010, Coty launched "Rimmel

4   Lash Accelerator"; Coty's newest mascara with an "advanced, ultra lengthening"

5   "clinically-tested" "Grow-Lash Complex" formula.   Rimmel Lash Accelerator is sold

6   online and in virtually every major food, drug, and mass retail outlet in the country.

7   Rimmel Lash Accelerator retails for approximately $8.00-$9.00. The following is a screen

8   shot of the Product:

9

10

11

12   

13

14

15

16

17        14.     Since the Product's launch, Coty has consistently conveyed the very specific

18   message to consumers throughout the United States, including California, that Rimmel

19   Lash Accelerator, with its "advanced, ultra-lengthening" "clinically tested" "Grow Lash

20   Complex" is a "[l]ash [a]ccelerator" that, upon first application will cosmetically lengthen

21   lashes by 80% and with "regular use," will cause lashes to physically "grow" 37% longer

22   and become "more numerous" in 30 days.  To illustrate the dual cosmetic and physical

23   effects of the Product on "bare lash[es]", Defendant includes a ruler on the front of the

24   Product label depicting the 80% instant cosmetic lengthening effect realized on the first

25   application of the Product and each successive application, as well as the 117% lash

26   length achievement after 30 days of continued use.  The 37% difference between the two

27

28

illustrated measurements (117% minus 80%) is the physical growth of the lash itself, as opposed to the 80% cosmetic lengthening effect of just coating the lash with the Product.

15.   Rimmel Lash Accelerator contains "Grow-Lash Complex", which Coty describes as a "clinically tested" "advanced, ultra-lengthening formula" that "extends and fortifies lashes."  The primary ingredient in "Grow-Lash Complex" is Procapil®, which purportedly "helps lashes grow longer and stronger."  Procapil® either alone, or in combination with the other Product's ingredients (Bamboo extract, Biotin and Keratin), does not physically "grow" eyelashes 37% longer in 30 days or make eyelashes "more numerous" as the Rimmel Lash Accelerator packaging and labeling proclaims.  Tellingly, although Coty represents the Product's grow lash results are "clinically tested", nowhere on the Product's packaging does Coty reference the confirmatory studies.  In point of fact, there are no competent or reliable "clinical tests" demonstrating that Rimmel Lash Accelerator or its ingredients will physically grow and multiply lashes within 30 days as Defendant represents.

16.   And, studies on the much more potent LATISSE® product, which is the only prescription grade eyelash growth product approved by the FDA, have shown that even with a prescription grade product it takes several months (versus 30 days) of application for growth to occur.  *See, e.g.*, Smith, S., Eyelash Growth In Subjects Treated With Bimatoprost: A Multicenter, Randomized, Double-Masked, Vehicle-Controlled, Parallel-Group Study, 65(5) J Am Acad Dermatol. 801-6 (2012) (clinical effects of bimatoprost were seen starting at 8 weeks); Yoelin, et al., Safety, Effectiveness and Subjective Experience With Topical Bimatoprost 0.03% for Eyelash Growth (May 2010) (improvement in eyelashes seen within 3 months); Cohn, J., Enhancing the Growth of Natural Eyelashes: The Mechanism of Bimatoprost-Induced Eyelash Growth, Derm. Surgery 1361 (2010).

17.   Coty's claim that its over-the-counter non-prescription grade Product will physically accelerate eyelash growth and multiply lashes in as little as 30 days (instead of

several months) is particularly attractive to Coty's target market. Each and every consumer who purchases Rimmel Lash Accelerator is exposed to Coty's deceptive grow lash claim, including the ruler demonstrating the additional represented physical growth because it appears prominently, conspicuously, and almost exclusive of any other representations on the front of each box as follows:

**Front**



//

//

//

//

//

//

18.    The back panel of Rimmel Lash Accelerator repeats the grow lash claim:

Back



Coty's grow lash claim is false, misleading and deceptive.

***The Impact of Coty's Wrongful Conduct***

19.    Even though Rimmel Lash Accelerator does not cause eyelashes to physically grow or generate new eyelashes in 30 days, Coty continues to deceptively convey through its advertising and labeling the message: Rimmel Lash Accelerator, with its "advanced, ultra-lengthening" "clinically tested" "Grow-Lash Complex" formula is a "[l]ash [a]ccelerator" that, with "regular use," will cause lashes to physically "grow" 37% longer and become "more numerous" in 30 days.

20.    As the manufacturer, seller and/or distributor of Rimmel Lash Accelerator, Coty possesses specialized knowledge regarding the content and effects of the ingredients contained in Rimmel Lash Accelerator and is in a superior position to learn of the effects – and has learned of the effects – Rimmel Lash Accelerator has on consumers.

21.    Specifically, Coty knew or should have known, but failed to disclose that Rimmel Lash Accelerator does not cause eyelashes to physically grow in length or generate new eyelashes and certainly not within the 30 day time frame advertised and it does not have competent and reliable clinical tests to support its "clinically tested" grow lash claim.

22.    Plaintiff and Class members have been and will continue to be deceived or misled by Coty's deceptive grow lash claim.  Plaintiff purchased and used Rimmel Lash Accelerator during the Class period and in doing so, read and considered the Rimmel Lash Accelerator label and packaging (including the representation that the Product physically causes lashes to "grow" in length by 37% and generates new lashes in 30 days) and based her decision to buy the Product and pay the price premium on the grow lash claim.  Coty's grow lash claim was a material factor in influencing Plaintiff's decision to purchase and use Rimmel Lash Accelerator. Plaintiff would not have purchased the premium priced Rimmel Lash Accelerator had she known that Coty's grow lash claim was false and misleading and that Coty did not possess competent and reliable clinical tests to support its "clinically tested" grow lash claim.

23.    As a result, Plaintiff and the Class members have been damaged in their purchases of Rimmel Lash Accelerator and have been deceived into purchasing a Product that they believed, based on Coty's grow lash representation, would physically grow and multiply eyelashes within 30 days, when, in fact, it does not.

24.    Based upon the purported grow lash claim conveyed in its marketing and advertising campaign, Coty is able to price Rimmel Lash Accelerator at a premium over other mascaras sold by its competitors and itself.  For example, Coty prices Rimmel Lash Accelerator around $1.50-$2.50 more than Coty's other mascara products that do not make a similar grow lash claim.

25.    Coty has reaped enormous profits from its false marketing and sale of Rimmel Lash Accelerator.

1

## CLASS DEFINITION AND ALLEGATIONS

2    26.    Plaintiff brings this action on behalf of herself and all other similarly

3    situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of

4    Civil Procedure and seeks certification of the following Class against Coty for violations

5    of California state laws and/or similar laws in other states:

6    **Multi-State Class Action**
     All consumers who purchased Rimmel Lash Accelerator in the
7    U.S. for personal use until the date notice is disseminated.

8    Excluded from this Class are Coty and its officers, directors
     and employees, and those who purchased Rimmel Lash
9    Accelerator for the purpose of resale.

10    27.    In the alternative, Plaintiff brings this action on behalf of herself and all

11   other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of

12   the Federal Rules of Civil Procedure and seeks certification of the following Class:

13   **California Class Action**
     All California consumers who purchased Rimmel Lash
14   Accelerator for personal use until the date notice is
     disseminated.
15
16   Excluded from this Class are Coty and its officers, directors
     and employees and those who purchased Rimmel Lash
17   Accelerator for the purpose of resale.

18    28.    *Numerosity*.  The members of the Class are so numerous that joinder of all

19   members of the Class is impracticable.   Plaintiff is informed and believes that the

20   proposed Class contains thousands of purchasers of Rimmel Lash Accelerator who have

21   been damaged by Coty's conduct as alleged herein. The precise number of Class members

22   is unknown to Plaintiff.

23    29.    *Existence and Predominance of Common Questions of Law and Fact*.

24   This action involves common questions of law and fact, which predominate over any

25   questions affecting individual Class members.  These common legal and factual questions

26   include, but are not limited to, the following:

27

28

1        (a)    whether the claims discussed above are true, or are misleading, or

2  objectively reasonably likely to deceive;

3        (b)    whether Coty's alleged conduct violates public policy;

4        (c)    whether the alleged conduct constitutes violations of the laws

5  asserted;

6        (d)    whether Coty engaged in false or misleading advertising;

7        (e)    whether Plaintiff and Class members have sustained monetary loss

8  and the proper measure of that loss; and

9        (f)    whether Plaintiff and Class members are entitled to other appropriate

10  remedies, including corrective advertising and injunctive relief.

11      30.    ***Typicality***. Plaintiff's claims are typical of the claims of the members of the

12  Class because, *inter alia*, all Class members were injured through the uniform misconduct

13  described above and were subject to Coty's deceptive grow lash claim that accompanied

14  each and every package and/or label of Rimmel Lash Accelerator. Plaintiff is advancing

15  the same claims and legal theories on behalf of herself and all members of the Class.

16      31.    ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the

17  interests of the members of the Class. Plaintiff has retained counsel experienced in

18  complex consumer class action litigation, and Plaintiff intends to prosecute this action

19  vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

20      32.    ***Superiority***. A class action is superior to all other available means for the

21  fair and efficient adjudication of this controversy. The damages or other financial

22  detriment suffered by individual Class members is relatively small compared to the

23  burden and expense that would be entailed by individual litigation of their claims against

24  Coty. It would thus be virtually impossible for Plaintiff and Class members, on an

25  individual basis, to obtain effective redress for the wrongs done to them. Furthermore,

26  even if Class members could afford such individualized litigation, the court system could

27  not. Individualized litigation would create the danger of inconsistent or contradictory

28

1  judgments arising from the same set of facts. Individualized litigation would also increase
2  the delay and expense to all parties and the court system from the issues raised by this
3  action. By contrast, the class action device provides the benefits of adjudication of these
4  issues in a single proceeding, economies of scale, and comprehensive supervision by a
5  single court, and presents no unusual management difficulties under the circumstances
6  here.

7      33.    Coty has acted on grounds that apply generally to the Class, making
8  injunctive relief appropriate respecting the Class as a whole.

9      34.    Unless a Class is certified, Coty will retain monies received as a result of its
10  conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction
11  is issued, Coty will continue to commit the violations alleged, and the members of the
12  Class and the general public will continue to be misled.

### COUNT I
### Violation of Business & Professions Code §17200, *et seq.*

15      35.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs
16  above, as if fully set forth herein.

17      36.    Plaintiff brings this claim individually and on behalf of the Class.

18      37.    As alleged herein, Plaintiff has suffered injury in fact and lost money or
19  property as a result of Coty's conduct because she purchased Rimmel Lash Accelerator
20  in reliance on Coty's grow lash claim detailed above, but did not receive a product that
21  performed as represented.

22      38.    The Unfair Competition Law, Business & Professions Code § 17200,
23  *et seq.* ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or
24  "unfair" business act or practice and any false or misleading advertising.

25      39.    In the course of conducting business, Coty committed "unlawful" business
26  practices by, *inter alia*, making the grow lash claim (which also constitutes advertising

- 13 -

within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§ 17200, *et seq.* Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

40.     In the course of conducting business, Coty committed "unfair" business practices by, *inter alia*, making the grow lash claim (which also constitutes advertising within the meaning of § 17200) and omissions of material facts regarding Rimmel Lash Accelerator in its advertising campaign, including the Product's packaging, as set forth more fully herein. There is no societal benefit from false advertising, only harm. Plaintiff and other Class members paid money for a mascara that would physically cause their lashes to multiply in number and grow in length, which they did not receive. While Plaintiff and Class members were harmed, Coty was unjustly enriched by its false grow lash representation and omissions. Because the utility of Coty's conduct (zero) is outweighed by the gravity of the harm Plaintiff and Class members suffered, Coty's conduct is "unfair" having offended an established public policy. Further, Coty engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

41.     Further, as stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers. Coty's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

42.     There were reasonably available alternatives to further Coty's legitimate business interests, other than the conduct described herein.

43.     Business & Professions Code § 17200, *et seq.*, also prohibits any

1    "fraudulent business act or practice."

2          44.    In the course of conducting business, Coty committed "fraudulent business

3    act or practices" by, *inter alia*, making the grow lash claim (which also constitutes

4    advertising within the meaning of § 17200) and omissions of material facts regarding

5    Rimmel Lash Accelerator in its advertising campaign, including the Product's packaging, as

6    set forth more fully herein.  Coty misrepresented on each and every Rimmel Lash

7    Accelerator box that its Product, *inter alia*, is a "[l]ash [a]ccelerator" specifically formulated

8    with a "clinically tested" "Grow-Lash Complex" formula that, with "regular use," will

9    result in lashes that physically "grow" 37% longer and become "more numerous" in 30

10   days.

11         45.    Coty's actions, claims, omissions and misleading statements, as more fully

12   set forth above, were also false, misleading and/or likely to deceive the consuming

13   public within the meaning of Business & Professions Code § 17200, *et seq.*

14         46.    Plaintiff and other members of the Class have in fact been deceived by

15   Coty's material grow lash representation and omissions.  Coty's deception has caused

16   harm to Plaintiff and other members of the Class who each purchased Rimmel Lash

17   Accelerator.  Plaintiff and the other Class members have suffered injury in fact and lost

18   money as a result of these unlawful, unfair, and fraudulent practices.

19         47.    Coty knew, or should have known, that its material representations and

20   omissions would be likely to deceive the consuming public and result in consumers

21   purchasing Rimmel Lash Accelerator and, indeed, intended to deceive consumers.

22         48.    As a result of its deception, Coty has been able to reap unjust revenue and

23   profit.

24         49.    Unless restrained and enjoined, Coty will continue to engage in the above-

25   described conduct.  Accordingly, injunctive relief is appropriate.

26         50.    Plaintiff, on behalf of herself and all others similarly situated, and the

27   general public, seeks restitution of all money obtained from Plaintiff and the members of

28

1   the Class collected as a result of unfair competition, an injunction prohibiting Coty from

2   continuing such practices, corrective advertising and all other relief this Court deems

3   appropriate, consistent with Business & Professions Code § 17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.***

7   51.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs

8   above, as if fully set forth herein.

9   52.   Plaintiff brings this claim individually and on behalf of the Class.

10   53.   This cause of action is brought pursuant to the Consumers Legal Remedies

11   Act, California Civil Code §1750, *et seq.* (the "Act"), and similar laws in other states.

12   Plaintiff is a consumer as defined by California Civil Code §1761(d).   Coty's Rimmel

13   Lash Accelerator is a "good" within the meaning of the Act.

14   54.   Coty  violated and continues to violate the Act by engaging in the following

15   practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and

16   the Class which were intended to result in, and did result in, the sale of Rimmel Lash

17   Accelerator :

(5)   Representing    that    [Rimmel   Lash   Accelerator   has] . . .   approval,
characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*        \*        \*

(7)   Representing that [Rimmel Lash Accelerator is] of a particular standard,
quality or grade . . . if [it is] of another.

\*        \*        \*

(9)   Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

(16)   Representing that [Rimmel Lash Accelerator has] been supplied in
accordance with a previous representation when [it has] not.

- 16 -

55.     Coty violated the Act by representing and failing to disclose material facts on the Rimmel Lash Accelerator labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

56.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Coty and for restitution and disgorgement.

57.     Pursuant to §1782 of the Act, Plaintiff notified Coty in writing by certified mail of the particular violations of §1770 of the Act and demanded that Coty rectify the problems associated with the actions detailed above and give notice to all affected consumers of Coty's intent to so act.  A copy of the letter is attached hereto as Exhibit A.

58.     If Coty fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

59.     Coty's conduct is fraudulent, wanton and malicious.

60.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT III
## Breach of Express Warranty

61.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the Class.

63.     The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

64.   At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

65.   As discussed above, Coty expressly warranted on each and every Rimmel Lash Accelerator label that the Product is a "[l]ash [a]ccelerator" specifically formulated with a "clinically tested" "Grow-Lash Complex" formula that, with "regular use," will result in lashes that physically "grow" 37% longer and become "more numerous" in 30 days. The grow lash claim made by Coty is an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiff placed importance on Coty's grow lash claim.

66.   All conditions precedent to Coty's liability under this contract have been performed by Plaintiff and the Class.

67.   Coty breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that grows or multiplies eyelashes, let alone in 30 days as represented.

68.   As a result of Coty's breach of its contract, Plaintiff and the Class have been damaged in the amount of the price of the Product they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.   Certifying the Class as requested herein;

B.   Awarding Plaintiff and the proposed Class members damages;

C.   Awarding restitution and disgorgement of Coty's revenues to Plaintiff and the proposed Class members;

D.   Awarding injunctive relief as permitted by law or equity, including: enjoining Coty from continuing the unlawful practices as set forth herein, and directing Coty to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

1   E.   Ordering Coty to engage in a corrective advertising campaign;

2   F.   Awarding attorneys' fees and costs; and

3   G.   Providing such further relief as may be just and proper.

4   **DEMAND FOR JURY TRIAL**

5   Plaintiff hereby demands a trial by jury of her claims to the extent authorized by

6   law.

7   Dated: December 3, 2012                    BONNETT, FAIRBOURN, FRIEDMAN
8                                              & BALINT, P.C.

9
10                                             Elaine A. Ryan
11                                             Patricia N. Syverson
                                               Lindsey M. Gomez-Gray
12                                             2325 E. Camelback Road, Suite 300
                                               Phoenix, AZ 85016
13                                             eryan@bffb.com
                                               psyverson@bffb.com
14                                             lgomez-gray@bffb.com
                                               Telephone:  (602) 274-1100
15
                                               BONNETT, FAIRBOURN, FRIEDMAN
16                                             & BALINT, P.C.
                                               Manfred Mueke
17                                             600 W. Broadway, Suite 900
                                               San Diego, California 92101
18                                             mmueke@bffb.com
                                               Telephone:  (619) 756-6978
19
                                               STEWART M. WELTMAN LLC
20                                             Stewart M. Weltman
                                               122 S. Michigan Avenue, Suite 1850
21                                             Chicago, Illinois 60603
                                               sweltman@weltmanlawfirm.com
22                                             Telephone:  312-588-5033
                                               (Of Counsel Levin, Fishbein, Sedran & Berman)
23
                                               *Attorneys for Plaintiff*
24

25

26

27

28

- 19 -